UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

FILED

00 MAR -3 PM 1:55

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| TRUSTEES OF THE UNITED ASSOCIATION LOCAL 760, PLUMBERS 7 STEAM FITTERS AND MUSCLE SHOALS MECHANICAL CONTRACTORS' ASSOCIATION'S HEALTH AND WELFARE FUND; TRUSTEES OF THE UNITED ASSOCIATION LOCAL 760, PLUMBERS & STEAM FITTERS AND MUSCLE SHOALS MECHANICAL CONTRACTORS' ASSOCIATION'S LOCAL PENSION FUND; and TRUSTEES OF THE UNITED ASSOCIATION LOCAL 760, PLUMBERS & STEAM FITTERS AND MUSCLE SHOALS MECHANICAL CONTRACTORS' ASSOCIATION'S LOCAL APPRENTICE AND JOURNEYMEN TRAINING FUND, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) Civil Action No. CV99-S-1450-NW ) |
| HARDEMAN PLUMBING & MECHANICAL CO., INC., | ) ) ) |
| Defendant. | ) |

**ENTERED**

MAR - 3 2000

## MEMORANDUM OPINION

Plaintiffs bring this action pursuant to the Labor Management Relations Act, 29 U.S.C. § 185, and the Employees' Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 621 et seq., alleging that defendant is delinquent with respect to contributions to three multiemployer plans under the provisions of a Labor Agreement. Plaintiffs' complaint contains two counts: that

defendant is in breach of the Labor Agreement (Count I); and that defendant's conduct violates section 502(g) of ERISA, 29 U.S.C. § 1132(g)(2) (Count II).

This action is before the court on plaintiffs' motion for summary judgment (doc. no. 10). Defendant has failed to respond in any way to plaintiffs' motion, despite being provided with an opportunity to do so. (See court's January 10, 2000 order (doc. no. 11).) Therefore, after consideration of plaintiffs' motion and evidentiary submission, the court finds that the motion is due to be granted in its entirety.

## I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. ..." (Emphasis added.) The movant bears the initial burden of showing the court, by reference to materials on file, that no genuine issues of material fact exist to be decided at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265

2

(1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The moving party discharges this burden by "showing" or "pointing out" to the court that there is an absence of evidence to support the non-moving party's case. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995)*(per curiam)*. Rule 56 permits the movant to discharge this burden with or without supporting affidavits. *See Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. When the moving party has discharged its burden, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *See Jeffery*, 64 F.3d at 593.

In deciding whether the moving party has met its burden, the court is obligated to draw all inferences from the evidence presented in the light most favorable to the non-movant and, also, to resolve all reasonable doubts in that party's favor. *See Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Inferences in favor of the non-movant are not unqualified, however. "Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted). Moreover, evidence that is merely colorable, *see Brown v. City of*

3

*Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988), conclusory, *see Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989), or conjectural, does not create a genuine issue of material fact.

Thus, if a reasonable fact finder evaluating the evidence <u>could</u> draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment. *See Augusta Iron & Steel Works v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988). A "genuine" dispute about a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jeffery*, 64 F.3d at 594 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The bottom line is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. at 2512.

## II. FACTUAL BACKGROUND

Plaintiffs are trustees of three separate "multi-employer plans." *See* 29 U.S.C. § 1002(37)(A).[1] The first plan, referred to as the Local Pension Fund, qualifies as an "employee pension

---

[1] Defendant admits in its answer that the plans qualify as a "multi-employer plan. *See* Answer ¶ 5.

4

benefit plan." *See* 29 U.S.C. § 1002(2).[2]   The second plan, referred to as the Health and Welfare Fund, was established to provide medical, surgical, and hospital benefits to its participants and beneficiaries, and qualifies as an "employee welfare benefit plan." *See* 29 U.S.C. § 1002(1).[3]   The third plan, the Apprentice and Journeymen Training Fund, was established to provide vocational training to its participants and beneficiaries, and is also an "employee welfare benefit plan."[4]

Defendant is an employer as that term is defined in Section 3(5) of ERISA. *See* 29 U.S.C. § 1002(5).[5]   Defendant entered into a "Master Contract Labor Agreement" with United Association Local 760, Plumbers and Steamfitters and Muscle Shoals Mechanical Contractors Association (the "union") on August 24, 1998, wherein it agreed to contribute to all of the aforementioned employee benefit funds. (Plaintiff's submission, exhibit 1.)   The relevant portion of the Labor Agreement is set forth below:

### ARTICLE VII
### EMPLOYEE BENEFIT FUNDS

SECTION 7.1 As part of the compensation due employees for work performed under this Agreement, the Employer shall make

---

[2] Defendant also admits this factual finding. *See* Answer ¶ 3.

[3] *See* Answer ¶ 4.

[4] *Id.*

[5] Defendant also has admitted that it qualifies as an employer. *See* Answer ¶ 7.)

5

payments to Local's respective Apprentice and Journeyman
Training Fund for each hour worked by each employee whose
work is covered by this Agreement in the amounts specified
in this Agreement.

SECTION 7.2 The Employer shall comply with all terms and
provisions of each trust agreement establishing the
respective Employee Benefit Funds and shall comply with all
uses and regulations promulgated by the Trustees of the
Funds.    The Association and the Union and all Employers
covered by this Agreement agree to be bound by all of the
terms of the Trust Agreements creating the Welfare Fund, the
Pension Fund, Education Fund and any other jointly
administered fringe benefit funds established pursuant to
Section 302 of the Labor-Management Relations Act, as
amended and by all of the actions and rules of the Trustees
administering such funds in accordance with the trust
agreement and regulations of the Trustees, provided that
such agreements, actions, regulations and rules shall not be
inconsistent with this Agreement. Each employer covered by
this Agreement hereby accepts as Trustees the Trustees
appointed under and in accordance with such trust
agreements.    The Employers and the Union hereby ratify all
actions already taken or to be taken by such Trustees within
the scope of their authority.

SECTION 7.3 On or before the 20th of each calendar month,
the Employers shall prepare and transmit to the Fund Manager
of the Employee Benefit Funds, a report showing the number
of hours worked and gross wages, by each employee covered by
this Agreement during the payroll periods ending in the
preceding calendar month.    The report shall be in such form
as shall be prescribed by the trustees of Employee Benefit
Funds.

SECTION 7.4 Failure of the Employer to pay contribution due
within thirty (30) days of due date to the Employee Benefit
Funds shall constitute a breach of this contract and the
Union shall be authorized to remove the employees from the
job or shop of any such Employer notwithstanding the
provisions of ARTICLE XIV.

6

## LOCAL PENSION FUND

The undersigned Employers and Union agree that a local
Pension Fund shall be established for each employee covered
by this collective bargaining agreement.  Said fund shall
remain in effect for the duration of the current bargaining
agreement and any renewals and extensions thereof:

> For each hour or portion thereof that any employee
> receives pay, the employer shall make a contribution
> of One Dollar and forty-five cents (1.45) paid by
> separate check, to the Local Pension Fund and mailed
> to the Plumbers & Steamfitters Local 760, PO Box
> 2567, Muscle Shoals, AL 35662 on remittance form copy
> #5.  One dollar and forty cents (1.40) of this money
> will be credited to employee with five cents ...
> being deducted by Pension Fund, to go towards
> administrative charges.  The Employer agrees to abide
> by all rules and regulations as established by the
> Trust Agreement of Local 760.

. . .

## HEALTH & WELFARE TRUST FUND

The Employer agrees as a condition to the furnishing of
employees to employer, that the employer shall remit to the
Plumbers & Steamfitters, Local 760 Health & Welfare Trust
Fund, the sum of Two dollars and fifty-four cents (2.54) per
hour worked.  Due date of these contributions shall be no
later than the 20th of the month following time worked by
the employee.

Failure of the Employer to pay contributions due within
thirty (30) days of due date to the Local shall constitute
a breach of this contract and the Union will withdraw
employees from the defaulting employer until such time as
the contributions are paid in full.  Contributions by the
Employers to the above named fund shall not be considered as
wages.

*Id.* at 5-6.

    Defendant failed to make its contractual contributions to the

7

Pension Fund for the months of February, March, August, and December 1998, as well as January, February, October, November and December of 1999. (Hughes affidavit ¶5.) Such delinquency totals $23,209.24. (*Id.*)

Likewise, defendant failed to make contributions to the Health and Welfare Fund for the months of December 1998, and January, February, November, and December of 1999. (*Id.* ¶ 6.) Defendant's nonpayment for this fund totals $30,397.58. (*Id.*)

Moreover, defendant failed to make payments to the Apprentice and Journeymen Training Fund for the months of February, March, August, and December 1998, as well as January, February, and December of 1999. (*Id.* ¶ 7.) This delinquency totals $2,205.00. (*Id.*) The total that defendant owes all three funds amounts to $55,811.82. (*Id.* ¶ 8.)

Defendant does not dispute either the existence of the delinquency or the total arrearage amount. Indeed, defendant entered into two separate Agreements on April 19, 1999 and April 21, 1999, acknowledging that it was in arrears with respect to its contributions and agreeing to a plan to resolve its delinquency. (Plaintiff's exhibits 2 and 3.) Defendant also acknowledged in writing that it was in arrears with respect to its October,

8

November, and December 1999 contributions.   (Plaintiff's exhibit
4.)

Plaintiffs argue that there are no issues of material fact to
be resolved by this court, and request that the court enter
judgment in their favor and award:

    a.    the total amount of unpaid pension contributions due
          to the Pension Fund;

    b.    the total amount of unpaid contributions due to the
          Health & Welfare Fund;

    c.    the total amount of unpaid contributions due to the
          Apprenticeship Fund;

    d.    interest on the amount of unpaid contributions due,
          at a rate equal to the amount provided in 26 U.S.C.
          § 6621;

    e.    liquidated damages in an amount equal to interest on
          the unpaid contributions, or liquidated damages in an
          amount not in excess of twenty percent (20%) of the
          amount as may be determined by this Court; [and]

    f.    reasonable attorney's fees and costs incurred in
          prosecuting this action.

(Complaint at 5.)

### III. DISCUSSION

In 1980, Congress amended ERISA "to provide trustees of
multiemployer benefit plans with an effective federal remedy to
collect delinquent contributions."  *Laborers Health and Welfare
Trust Fund for Norther California v. Advanced Lightweight Concrete*

9

Co., 484 U.S. 539, 541, 108 S.Ct. 830, 832, 98 L.Ed.2d 936 (1988).

The provision "was added because 'simple collection actions brought

by plan trustees have been converted into lengthy, costly and

complex litigation concerning claims and defenses unrelated to the

employer's   promise   and   the   plans'   entitlement   to   the

contributions,' and steps must be taken to 'simplify delinquency

collection.'" *Kaiser Steel Corporation v. Mullins*, 455 U.S. 72, 87

102 S.Ct. 851, 861, 70 L.Ed.2d 833 (1982) (internal citation

omitted). Congress was also "concerned about the problem that had

arisen because a substantial number of employers had failed to make

their 'promised contributions' on a regular and timely basis."

*Laborers Health*, 484 U.S. at 546, 108 S.Ct. at 834.

Accordingly, Congress enacted Sections 515 and 502(g)(2) of

ERISA in response to these concerns.     Section 515, entitled

"delinquent contributions," provides:

> Every employer who is obligated to make contributions to a
> multiemployer plan under the terms of the plan or under the
> terms of a collectively bargained agreement shall, to the
> extent not inconsistent with law, make such contributions in
> accordance with the terms and conditions of such plan or
> such agreement.

29 U.S.C. § 1145. When the provisions of section 515 are breached,

a trustee may bring an action in federal district court to obtain

the relief specified in section 502(g)(2).

10

> In any action under this title by a fiduciary for or on
> behalf of a plan to enforce section 515 of this title in
> which a judgment in favor of the plan is awarded, the court
> shall award the plan--
>    (A) the unpaid contributions,
>    (B) interest on the unpaid contributions,
>    (C) an amount equal to the greater of--
>          (i)   interest on the unpaid contributions, or
>          (ii) liquidated damages provided for under the plan
>       in an amount not in excess of 20 percent (or such
>       higher percentage as may be permitted under Federal
>       or State law) of the amount determined by the court
>       under subparagraph (A),
>    (D) reasonable attorney's fees and costs of the action, to
>       be paid by the defendant, and
>    (E) such other legal or equitable relief as the court deems
>       appropriate.
> For purposes of this paragraph, interest on unpaid
> contributions shall be determined by using the rate provided
> under the plan, or, if none, the rate prescribed under
> section 6621 of the Internal Revenue Code of 1954.

29 U.S.C. § 1132(g)(2). Although the Supreme Court has

acknowledged that these remedies are "strict," they are consistent

with Congressional intent "to give employers a strong incentive to

honor their contractual obligations to contribute and to facilitate

the collection of delinquent accounts." *Laborers Health*, 484 U.S.

at 547, 108 S.Ct. at 835.

Having reviewed the uncontroverted evidence submitted by

plaintiffs in support of their motion for summary judgment, the

court finds that there are no issues of material fact and that the

movants are entitled to judgment as a matter of law. Specifically,

plaintiffs have established that defendant is delinquent in its

11

contributions to three separate multiemployer plans in the total sum of $55,811.82. Such delinquency not only violates the Labor Agreement entered into between the parties, but also the aforementioned provisions of ERISA.

Plaintiffs also request attorneys' fees, interest on the delinquency, and liquidated damages, but before the court determines a reasonable award with regard to these remedies, it desires further briefing from the parties. In particular, the Eleventh Circuit detailed the proper method for determining an award of attorneys' fees in *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988). The district court must multiply the number of hours reasonably expended by a reasonable hourly rate to arrive at an amount called the "lodestar." *See Norman*, 836 F.2d 1292 at 1299. In filing their motion for attorneys' fees, plaintiffs are reminded that:

> The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates. ... [F]ee counsel bears the burden in the first instance of supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate. Further, fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity.

12

*Id.* at 1303. Moreover, such motion should also include a discussion of the proper rates of interest[6] to be applied,[7] and a proposed interest calculation in accordance with *Carriers Container Council, Inc. v. Mobile Steamship Assoc., Inc.*, 948 F.2d 1219, 1222-23 (11th Cir. 1991) and other Eleventh Circuit precedent. Defendant will be given an opportunity to respond to plaintiffs proposed calculations.

### IV.   CONCLUSION

Based on the foregoing, the court finds that plaintiffs' motion for summary judgment is due to be granted, as there are no issues of material fact, and judgment is due to be entered in favor of plaintiffs. An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this **3rd** day of March, 2000.

_____
United States District Judge

---

[6] Such information should be submitted in verified form.

[7] For the court's convenience, plaintiffs are requested to provide the proper daily rate of interest, applicable after March 15, 2000.

13